Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
(619) 233-7770
(619) 297-1022

[Additional Counsel on Signature Page]

Attorneys for Janet Heathman

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Heathman <br><br><br>     Plaintiff, <br><br> v. <br><br> Portfolio Recovery Associates, LLC <br><br>     Defendant. | Case No: **12-cv-00201 IEG (RBB)** <br><br> **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; POINTS AND AUTHORITIES** <br><br> **Date: 1/22/2013** <br> **Time: 10:30 AM** <br> **Crtrm: 1** <br><br> **Judge: Hon. Irma E. Gonzalez** |

HYDE & SWIGART
San Diego, California

*Table of Contents*

I.   Introduction.................................................................................................1

II.  Factual Background .....................................................................................1

III. Legal Standards ...........................................................................................3

IV.  Summary of the Argument ..........................................................................3

V.   Argument .....................................................................................................4

A.  PRA has repeatedly failed to provide Heathman with the name and address of the original creditor, if any, in this matter, in violation of 15 U.S.C. § 1692g and California's Rosenthal Act.................................................................................4

B.  By alleging an account stated in its state complaint, PRA misrepresented the legal status of the debt, which violates 15 U.S.C. § 1692e(2)(A)........................................6

1.  There was never an account stated in this case ...................................7

i.   Neither party to this supposed account stated cause of action alleged by PRA, much less both, ever intended to form such an agreement ............................7

a.   Heathman denies she and Capital One ever formed an account stated ......7

ii.  In summary, this "account stated" was fabricated by PRA, which in turn violated the FDCPA ...............................................................8

C.  By alleging that Heathman owed $6,410.08 for unpaid consideration under other common counts, PRA violated 15 U.S.C. § 1692f(1) ..................................................9

1.  PRA also misrepresented the amount recoverable under theories of money lent and goods, wares and merchandise, and in the process violated the FDCPA ........9

i.   Assumpsit ........................................................................10

ii.  Assumpsit is intended to prevent unjust enrichment, and not to enforce contractual claims for damages other than restitution ...................................11

iii. Even for claims based on an express contract, the only remedy available under assumpsit is restitution ........................................................11

iv.  The rationale for allowing only restitution under assumpsit is that the express contract has been waived..........................................................12

HYDE & SWIGART
San Diego, California

v.   As PRA claimed a right to contractual interest and fees under a theory of assumpsit, PRA claimed a right to more money than was actually recoverable under a theory of assumpsit............................................................13

D.   The Rosenthal Act establishes liability under California law for violations of the FDCPA ........................................................................................13

VI.   Conclusion .............................................................................................14

**HYDE & SWIGART**
San Diego, California

***Table of Cases***

*Abels v. JBC Legal Group, P.C.*

 227 F.R.D. 541 ..................................................................13

*Alkan v. Citimortgage, Inc.*

 336 F. Supp. 2d 1061 (N.D. Cal. 2004) ..................................14

*American Fruit Growers, Inc. v. Jackson*

 203 Cal. 748 (Cal. 1928) .....................................................7

*Anderson v. Liberty Lobby, Inc.*

 477 U.S. 242  (1986) ..........................................................3

*Block v. D. W. Nicholson Corp.*

 77 Cal. App. 2d 739 (Cal. App. 1947) ...................................8

*Celotex Corp. v. Catrett*

 477 U.S. 317 (1986) ...........................................................3

*Clark v. Capital Credit & Collection Servs., Inc.*

 460 F.3d 1162 (9th Cir. 2006)..........................................6, 9

*Donohue v. Quick Collect, Inc.*

 592 F.3d 1027 (9th Cir. 2010)..........................................6, 8

*Dunham v. Portfolio Recovery Assocs., LLC*

 663 F.3d 997 (8th Cir. Ark. 2011).......................................4

*Dupuy v. Weltman*

 442 F. Supp. 2d 822 (N.D. Cal. 2006) ..................................13

*Edstrom v. All Services and Processing*

 2005 U.S. Dist. LEXIS 2773 (N.D.Cal. February, 2005)..............13

*Farmers Ins. Exchange v. Zerin*

 53 Cal.App.4th 445 (1997) .................................................13

*Foster v. DBS Collection Agency*

 463 F. Supp. 2d 783 (S.D. Ohio 2006) ...............................6, 9

HYDE & SWIGART
San Diego, California

*Gardner v. Watson*

    170 Cal. 570 (Cal. 1915) ....................................................................7-8

*Kimber v. Fed. Fin. Corp.*

    668 F. Supp. 1480 (M.D. Ala. 1987) ...................................................4

*Mains v. City Title Ins Co.*

    (1949) 34 Cal.2d 580 .......................................................................11

*McBride v. Boughton*

    (2004) 123 Cal.App.4th 379 .........................................................10 - 13

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*

    637 F.3d 939 (9th Cir. Mont. 2011) ..........................................4, 6, 8

*Mejia v. Marauder Corp.*

    2007 U.S. Dist. LEXIS 21313 (N.D. Cal. 2007) ...............................13

*Mercantile Trust Co. v. Doe*

    26 Cal. App. 246 (Cal. App. 1914) ....................................................7

*Moya v Northrup*

    (1970) 10 Cal. App. 3d 276 ..............................................................11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*

    210 F.3d 1099 (9th Cir. 2000) ............................................................3

*Perry v. Schwartz*

    219 Cal. App. 2d 825 (Cal.App. 2d Dist. 1963) ...............................7-8

*Philpott v. City of Los Angeles*

    (1934) 1 Cal 2d 512 .......................................................................12-13

*R.E. Tharp v. Miller*

    261 Cal App 2d 81 (1968) ..................................................................7

*Sial v. Unifund CCR Partners*

    2008 U.S. Dist. LEXIS 66666 (S.D. Cal. Aug. 28, 2008) ..................14

*Stark v. McAllister*

    65 Cal. App. 2d 577 (Cal. App. 1944) .................................................8

HYDE & SWIGART
San Diego, California

*Strange v. Wexler*

    796 F. Supp. 1117 (N.D. Ill. 1992) ...................................................................6, 9

*Utility Audit Co. v. City of Los Angeles*

    (2003) 112 Cal.App.4th 950 ...................................................................11

*Zumbrun v. University of Southern California*

    (1972) 25 Cal.App.3d 1 ...................................................................12-13

**HYDE & SWIGART**
San Diego, California

## I.      Introduction.

Portfolio Recovery Associates, LLC ("PRA") is a debt collector that violated both the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act") when it falsely represented the legal status of a debt while collecting on that debt, and when it attempted to collect contractual interest and fees under non-contract theories in a state court collection case. PRA alleged the existence of a non-existent debt, and engaged in a fraud on Heathman, a senior citizen, and on the state court.

## II.     Factual Background.

Portfolio Recovery Associates, LLC ("PRA") is a debt buyer, and attempts to collect the debts it purchases, and is therefore a debt collector under the FDCPA and the Rosenthal Act. PRA does not issue credit, and did not issue any credit on that account at issue to Plaintiff.   In fact, PRA no longer even contends that Plaintiff is indebted to PRA.[1]  It is the unfair and abusive methods used by PRA while attempting to collect that are the focus of this lawsuit.

On July 21, 2011, PRA filed a filed a state court collection lawsuit against Heathman,[2] a senior citizen.   In this state complaint, PRA misrepresented the legal status of the debt by fabricating the existence of the debt claimed.   PRA never issued or extended credit to Plaintiff, and has no relationship, contractual or otherwise, with Plaintiff Heathman.[3]   PRA's claims are wholly false, and allege a debt that simply does not exist.  Despite this fact, PRA claimed to be a party to an "account stated" with Plaintiff, a common law form of "satisfaction and accord" found in contract law.   The reason for misrepresenting the legal status of the debt is that it makes obtaining a default judgment easier to obtain, as PRA is not forced to disclose telling details such as when and how the debt was formed.   Given that PRA simply fabricated the existence of the alleged debt, this is a great convenience to PRA.

This state complaint also alleged certain common law actions, based on a theory of _assumpsit_, stating that Heathman owed the sum of $6,410.08 as restitution, or on other words,

---

[1] Decl. Swigart, Plaintiff's Exhibit D, Response # 8.

[2] Request for Judicial Notice, Ex. A; Decl. Heathman ¶ 4.

[3] Decl. Heathman, ¶¶ 5, 16-31.

1   that Heathman received $6,410.08 in unpaid consideration from PRA.[4]    In fact, Heathman

2   received zero in unpaid consideration from PRA, making these claims both wildly inflated and a

3   misrepresentation of the legal status of the debt claimed by PRA.[5]   The purpose for this second

4   fabrication is that if Heathman had defaulted she, again, would have been held liable for an

5   inflated amount that was not really owed.

6        Heathman was forced to answer to PRA false claims in state court, and demanded

7   evidence for PRA's claims.[6]    Rather than provide evidence for their false claims, when

8   Heathman's discovery requests came due, PRA chose to dismiss.[7]    Heathman then filed this

9   federal action to recover for the above misrepresentations and as a first step toward putting an end

10  to this systematic duping of consumers, as these illegal tactics are commonplace.  In PRA's initial

11  disclosures, PRA neither identified, nor provided any documents to substantiates PRA's earlier

12  false claims of a debt.[8]    Heathman then again requested that PRA provide documents to

13  substantiate their claims of a debt.[9]   Again, PRA provided no documents to substantiate their

14  claims of a debt.[10]

15       It is entirely clear that PRA did not issue any credit to Heathman, and that Heathman

16  received no consideration from PRA.  PRA's claims in the state court complaint were therefore

17  simply false.  After repeated attempts to elicit from PRA documents to substantiate their claims, it

18  has become obvious that PRA does not possess any documents to substantiate their claims, and

19  simply lied to Heathman, and to the state court, regarding the existence of an "account stated" or

20  that Heathman received unpaid consideration from PRA.  As there are no triable issues of fact as

21  to the above issues, Heathman is entitled to summary judgment on the issue of liability, and

22  reserves the issue of damages for trial.

23  _____

24  [4] Request for Judicial Notice, Ex. A, ¶ CC-1b(3-4); Decl. Heathman ¶ 6.

25  [5] Decl. Heathman ¶ 30.

    [6] Decl. Recordon ¶¶ 2-5.

26  [7] Id. ¶ 6.

27  [8] Decl. Swigart ¶¶ 2-3.

    [9] Id., ¶¶ 4-7.

28  [10] Id., ¶¶ 8-11.

HYDE & SWIGART
San Diego, California

### III.    Legal Standards.

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).   In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."   *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Summary judgment shall be rendered where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits demonstrate the lack of any genuine issues of material fact, and that the moving party is entitled to a judgment as a matter of law.   Fed. Rule Civ. Proc. 56(c).   The entry of summary judgment is inappropriate where there exists a genuine and material issue of fact.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10, 91 L. Ed. 2d 202 (1986).   Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. *Id.* at 248, 106 S. Ct. at 2510.   A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party."   *Id.*

### IV.    Summary of the argument.

In its state complaint, PRA fabricated the legal status of the debt by claiming the existence of an "account stated" between PRA and Heathman, when in fact this never occurred, in order to collect an amount not owed, while avoid the sticky issue of providing proof of transactions that never occurred.   Had PRA filed for breach of contract, PRA would have been forced to prove the existence of a valid contract, and the receipt of consideration, which never occurred.   Because

PRA expected Heathman to default on the state court lawsuit, as most distressed consumers do,[11] PRA also fabricated other common law actions and attempted to collect amounts not actually due, by claiming that Heathman received $6,410.08 in unpaid consideration from PRA, when in fact Heathman received no consideration at all from PRA.

**V.     Argument.**

PRA is a debt collector under the FDCPA, which regulates the activities of debt collectors. "Debt collector" has been held to include those who purchase consumer debts after default. *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1485 (M.D. Ala. 1987).  Courts have already held that PRA is a debt collector under the FDCPA.  *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001, 2011 U.S. App. LEXIS 24864 (8th Cir. Ark. 2011)("In its brief, PRA concedes that it is a debt collector under the FDCPA….).  California's Rosenthal Act also has an expanded definition of "debt collector" that incorporates debt collectors under the FDCPA.[12]  The FDCPA and Rosenthal Act regulate debt collectors while they are collecting consumer debts, and here the debt at issue was such a consumer credit card debt covered by the FDCPA and the Rosenthal Act, as Heathman's transactions on the account at issue were all undertaken for personal or household purposes.[13]

**A.     PRA has repeatedly failed to provide Heathman with the name and address of the original creditor, if any, in this matter, in violation of 15 U.S.C. § 1692g and California's Rosenthal Act.**

15 U.S.C. § 1692g(a)(5) and Cal. Civ. Code § 1788.17, through incorporation, provide that, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(5) a statement that, upon the consumer's written request within the thirty-day

[11] For example, see *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 945 (9th Cir. Mont. 2011), where the court noted that the defendant "testified that approximately 90% of the collection lawsuits resulted in a default judgment."; Id., at 947, noting testimony that "a vast majority" of lawsuits against debtors result in default judgments.

[12] Cal. Civ. Code § 1788.2(c).

[13] Decl. Heathman ¶¶ 8-9.

HYDE & SWIGART
San Diego, California

period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

Assuming that this debt actually exists, PRA has failed to provide the name and address of the original creditor in this matter.  While it is unclear if any debt exists, it is entirely clear that if a debt does exist, PRA is not the original creditor.[14]  On August 11, 2011, Heathman, through counsel, made a written request for the name and address of the original creditor in this matter.[15]  Instead of providing the name of the original creditor, as required by 15 USC 1692g, PRA simply dismissed their state court collection action, and refused to respond.[16]  Doing so did not relieve PRA from the requirement to provide Heathman with the original creditor.

When Heathman filed this federal action, PRA was required to disclose all potential witnesses, which would certainly include any original creditor.  PRA identified no witnesses other than the parties and PRA's counsel in the underlying state court collection case.[17]  Heathman then requested copies of all documents referred to in PRA's initial disclosures, which would certainly include any documents substantiating PRA's claims of a debt, or identifying the original creditor if any.[18]  PRA did not provide a single document.[19]  Heathman sent an interrogatory asking PRA to identify all parties with any knowledge of the facts underlying the claims at issue.[20]  PRA provided no new witnesses, again failing to identify any creditor other than PRA, who clearly issued no credit to Heathman.[21]  Even today, Heathman does not know who, if anyone, is the original creditor to the account at issue.[22]  The account at issue is simply a fabrication by PRA.

_____

[14] Decl. Heathman ¶ 30.

[15] Decl. Recordon ¶¶ 2-5.

[16] Id., ¶6.

[17] Decl. Swigart ¶¶ 2-3.

[18] Id., ¶¶ 6-7.

[19] Id., ¶¶ 10-11.

[20] Id., ¶¶ 4-5.

[21] Id., ¶¶ 8-9.

[22] Decl. Heathman ¶¶ 17, 20-21.

**B.   By alleging an account stated in its state complaint, PRA misrepresented the legal status of the debt, which violates 15 U.S.C. § 1692e(2)(A).**

15 U.S.C. 1692e prohibits debt collectors from making misrepresentations in the collection of a debts, including the "legal status of any debt."

> Section 1692e(2) prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of … (A) the character, amount, **or legal status of any debt**; or (B) any … compensation which may be lawfully received by any debt collector for the collection of a debt." See [*Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006) at 1174-77) (possible violation of § 1692e(2) arising from misstatement of an account balance); *Foster v. DBS Collection Agency*, 463 F. Supp. 2d 783, 802 (S.D. Ohio 2006) (holding debt collectors violated § 1692e(2) by seeking attorney's fees not permitted by state law); *Strange v. Wexler*, 796 F. Supp. 1117, 1118 (N.D. Ill. 1992) (same).

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949-950 (9th Cir. Mont. 2011) (Bold face added for emphasis).

In its state complaint, PRA alleged that PRA and Heathman entered into an account stated, a common law agreement similar to satisfaction and accord in contract law.[23]   This complaint, which was directly served on Heathman,[24] was a sham.  Its allegations concerning the formation of an account stated were untrue, as shown by the Declaration of Janet Heathman, and by PRA's steadfast refusal to produce any documents to substantiate their claims.

When a debt collector uses false, deceptive, and misleading representations or means in a state court complaint while attempting to collect a debt, this conduct violates the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010)("…a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f.")

The purpose of such falsifications is to deny consumers the rights and remedies of a previous legitimate contract by falsely alleging that previous contract no longer exists.

_____

[23] Request for Judicial Notice, Ex. A, ¶ CC-1; Decl. Heathman ¶ 5.

[24] Decl. Heathman ¶ 10.

HYDE & SWIGART
San Diego, California

**1.    There was never an account stated in this case.**

An account stated is a new contract with new terms that replaces any previous contract between the parties.  *Mercantile Trust Co. v. Doe*, 26 Cal. App. 246, 252 (Cal. App. 1914) ("An account stated requires that there be an agreement, expressed or implied, that the balance is correct and this agreement constitutes a new contract which takes the place of the original contract whether open or closed.").   An account stated discharges the previous contract.  *R.E. Tharp v. Miller*   261 Cal App 2d 81, 84 (1968) ("It is elementary that an account stated is an express or implied agreement between a debtor and his creditor that a certain sum shall be paid and accepted in discharge of the debtor's obligation.")  It is a compromise.  *Gardner v Watson* 170 Cal 570, 574 (1915) ("The action upon an account stated is not upon the original dealings and transactions of the parties. ... It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement").   In other words, it presumes the parties have conducted themselves intentionally in an effort to modify their relationship.   In this case PRA and Heathman never negotiated at all; there was no contract between them.[25]

> **i.    Neither party to this supposed account stated cause of action alleged by PRA, much less both, ever intended to form such an agreement.**

Like all contracts, an Account Stated is formed only with the assent of both parties.   In A*merican Fruit Growers v. Jackson*, the Supreme Court of California made this very point when it held that both parties to an account stated must intend to manifest such an agreement.  *American Fruit Growers, Inc. v. Jackson*, 203 Cal. 748, 751-752 (Cal. 1928) ("[I]t is clear that a statement rendered cannot be said to be an account stated unless it was intended to be such....")

> **a.    Heathman denies that she and PRA ever formed an account stated.**

Heathman never formed a new contract with PRA, or any contract at all.     It was never considered; it was never discussed; it was never offered; and it was never accepted.[26]    PRA fabricated this claim in its effort to make prevailing in state court easier.   With no intent by Heathman to form a new contract, it is impossible for an account stated to have been formed.[27]

[25] Decl. Heathman ¶¶ 16-28.

[26] Id.

[27] *Perry v. Schwartz*, 219 Cal. App. 2d 825, 829 (Cal.App. 2d Dist. 1963).

**ii.  In summary, this "account stated" was fabricated by PRA, which in turn violated the FDCPA.**

It is axiomatic that without the intent by all parties to a contract, a contract cannot be formed, which is what an account stated creates.[28]  And even though *both* parties must intend to form such a contract, here there is no evidence of intent by any party to form an account stated.[29]

There can be no reasonable argument that the parties here ever formed the account stated that PRA alleged existed in its state complaint.  PRA has never identified a date, or a document, recording any "account stated" between Heathman and PRA, or any contract at all.  PRA has not produced any evidence of a debt at all.  When a debt collector uses false, deceptive, and misleading representations or means in a state complaint while attempting to collect a debt, this violates the FDCPA.  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010)("… a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f."); 15 U.S.C. § 1692e.

An account stated simply cannot be created from whole cloth by debt buyers for their own convenience, and with no evidence that the parties to the supposed account stated ever intended to form one.  As the Supreme Court of California has noted on this issue, for an account stated to be formed, "it must appear that at the time of the accounting, certain claims existed, of and concerning which an account was stated, that a balance was then struck and agreed upon, and that the defendant expressly admitted that a certain sum was then due from him as a debt." *Gardner v. Watson*, 170 Cal. 570, 575 (Cal. 1915); *Block v. D. W. Nicholson Corp.*, 77 Cal. App. 2d 739, 746 (Cal. App. 1947) (An account stated requires that there be an acknowledgment of a previous indebtedness, since such indebtedness constitutes the consideration upon which the new contract is based. It is also required that there be an agreement that the balance is correct, and a promise for the payment of such balance.); *Stark v. McAllister*, 65 Cal. App. 2d 577, 579 (Cal. App. 1944) (It is not enough that a final balance be struck, the parties must agree upon an exact amount as the amount owing from debtor to creditor.)

---

[28] *Perry v. Schwartz*, 219 Cal. App. 2d 825, 829 (Cal.App. 2d Dist. 1963).

[29] Decl. Heathman ¶¶ 16-28.

15 U.S.C. 1692e prohibits debt collectors from making misrepresentations in the collection of a debt or alleged debt, including the "legal status of any debt."

> Section 1692e(2) prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of … (A) the character, amount, **or legal status of any debt**; or (B) any … compensation which may be lawfully received by any debt collector for the collection of a debt." See [*Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006) at 1174-77] (possible violation of § 1692e(2) arising from misstatement of an account balance); *Foster v. DBS Collection Agency*, 463 F. Supp. 2d 783, 802 (S.D. Ohio 2006) (holding debt collectors violated § 1692e(2) by seeking attorney's fees not permitted by state law); *Strange v. Wexler*, 796 F. Supp. 1117, 1118 (N.D. Ill. 1992) (same).

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949-950 (9th Cir. Mont. 2011) (Bold face added for emphasis).

What PRA did here was falsely represent the legal status of the debt to not only Heathman, but the state court as well, in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(2) (A), and consequently, PRA violated the FDCPA and California's Rosenthal Act.

**C.   By alleging that Heathman owed $6,410.08 for unpaid consideration under other common counts, PRA violated 15 U.S.C. § 1692f(1).**

15 U.S.C. § 1692f(1) provides that it is a violation of the FDCPA to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Here PRA repeatedly tried to collect the sum of $6,410.08 under a number of common law theories that do not allow for the collection of anything other than the consideration actually received, in this case nothing, thereby violating the FDCPA. These causes of action only allow for recovery of restitution damages; that is, no contractual interest or fees.

**1.   PRA misrepresented the amount recoverable under theories of money lent and goods, wares and merchandise, and in the process violated the FDCPA.**

In the state court complaint at issue in this action, PRA alleged that Heathman was liable

HYDE & SWIGART
San Diego, California

for $6,410.08 based on a theory of "money lent," and "goods, wares and merchandise."[30]   Again, these claims falsified the legal status of the debt, and violated 15 U.S.C. § 1692e(2)(A) and Cal. Civ. Code § 1788.17.   Heathman did not receive $6,410.08 in unpaid consideration on this account, whether in the form of money lent, goods, wares and merchandise, or otherwise.   Again, this was merely PRA fabricating convenient facts and causes of action.

As Heathman states in her declaration, she never received any consideration from PRA, much less $6,410.08 in unpaid consideration.[31]      Consequently, the amount of unpaid consideration received by Heathman, by its very definition, had to be less than $6,410.08, and PRA had no right to recover more under the theories of money lent or goods, wares and merchandise.   This is because money lent and goods, wares and merchandise are both forms of assumpsit, which only allows a creditor to recover *restitution damages*, and not damages for more than the consideration received (the principle).   *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.

### i.   Assumpsit

Money lent and goods, wares and merchandise, like most common counts claims other than Account Stated, is based upon the theory of assumpsit.   Assumpsit is a remedy available for various types of indebtedness, and the remedy provided is restitution, as opposed to the expectation damages available for breach of contract.   *McBride v. Boughton* (2004) 123 Cal.App. 4th 379, 394 ("A common count is not a specific cause of action, … rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory.") Because assumpsit provides only for restitution, it does not provide for amounts other than the consideration received and not paid, in this case zero, and when PRA demanded an amount greater than that, it violated 15 U.S.C. § 1692f(1), as the amount demanded by PRA was not permitted by law.

---

[30] Request for Judicial Notice, Ex. A, ¶ CC-1b(3-4); Decl. Heathman ¶ 6.

[31] Decl. Heathman ¶ 30.

**ii.   Assumpsit is intended to prevent unjust enrichment, and not to enforce contractual claims for damages other than restitution**

The only remedy available for assumpsit is restitution because, although assumpsit arises at law, it is governed by principles of equity, just like unjust enrichment and quantum meruit.

> Although such an action is one at law, it is governed by principles of equity. It may be brought 'wherever one person has received money which belongs to another, and which "in equity and good conscience," or in other words, in justice and right, should be returned. . . . The plaintiff's right to recover is governed by principles of equity, although the action is one at law.' "

*Mains v. City Title Ins Co.* (1949) 34 Cal.2d 580, 586.  See also *Moya v Northrup*:

> The obligation to pay is rested upon the equitable principle of preventing unjust enrichment as applied to the particular circumstances which have arisen between the parties (emphasis added).

*Moya v Northrup* (1970) 10 Cal. App. 3d 276, 281.

**iii.   Even for claims based on an express contract, the only remedy available under assumpsit is restitution**

A claim for assumpsit may be based upon breach of an express contract, if one side has fully performed.

> As Witkin states in his text, "[a] common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such a case that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract." ' A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or a performance by one party of an express contract."

*Utility Audit Co. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 958.

However, even though an express contract may form the basis for an action in assumpsit, it may not be used to recover damages for breach of that express contract.  The only damages available are for return of the consideration received, in other words, *restitution*.  See *McBride v. Boughton* (2004):

> For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason…. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory (an election referred to at common law as "waiving the tort and suing in assumpsit"

*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.   See also *Zumbrun v. University of Southern California*:

> [S]ince the basic premise for pleading a common count … is that the person is thereby 'waiving the tort and suing in assumpsit,' any tort damages are out. Likewise excluded are damages for a breach of an express contract. The relief is something in the nature of a constructive trust and … 'one cannot be held to be a constructive trustee of something he had not acquired.' One must have acquired some money which in equity and good conscience belongs to the plaintiff or the defendant must be under a contract obligation with nothing remaining to be performed except the payment of a sum certain in money."

*Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 14–15.

The relief *Zumbrun* describes as "in the nature of a constructive trust" is the return of whatever is received.  This is precisely what restitution provides, and these remedies are identical.

### iv.   The rationale for allowing only restitution under assumpsit is that the express contract has been waived

The reason that no damages for breach of an express contract are available under assumpsit is that, under *McBride and Zumbrun*, any contract has been waived.  In doing so, any damages available under such a contract are also waived, in favor of the remedy provided by assumpsit, namely restitution.  The California Supreme Court described this election as follows:

> If money has been paid under such contract, the right of the party defrauded to waive the tort and recover such payment on the theory of an implied contract, in general assumpsit, is very generally recognized. . . . The right to recover in assumpsit assumes that on discovering the fraud the party defrauded elects to disaffirm the express contract. ….

*Philpott v. City of Los Angeles* (1934) 1 Cal 2d 512, 520. (emphasis added).

HYDE & SWIGART
San Diego, California

For this reason, the elements of assumpsit do not include proving the existence of an express contract. *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 ("The only essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.' "). Parties claiming a debt owed under a theory of assumpsit need not prove an express contract, because any such contract, should it exist, has been waived, as laid out in *Philpott, McBride* and *Zumbrun*, above. Therefore, PRA was only entitled under *assumpsit* to the return of the consideration received, in this case zero. PRA's claim for damages under assumpsit was fabricated.

> **v.    As PRA claimed a right to $6,410.08 in unpaid consideration under a theory of assumpsit, PRA claimed a right to more money than was actually recoverable under a theory of assumpsit**

As shown above, PRA could never recover more than the consideration received by Heathman under a theory of assumpsit. However, PRA attempted to recover more than mere consideration, or restitution. As shown above, Heathman received zero in unpaid consideration from PRA. PRA's claims that Heathman is liable to PRA for $6,410.08 in unpaid consideration violated the FDCPA's prohibitions on misrepresenting the amount of a debt, and on attempting to collect an amount not expressly authorized by the agreement creating the debt, or permitted by law, found at 15 U.S.C. §§1692e, e(2)(A) and f(1). PRA misrepresented the amount of debt under an assumpsit theory, and in doing so violated the FDCPA and Rosenthal Act pursuant to 15 U.S.C. § 1692f(1) and Cal. Civ. Code § 1788.17.

### D.    The Rosenthal Act establishes liability under California law for violations of the FDCPA.

The Rosenthal Act incorporates the FDCPA by reference by requiring compliance with the substantive provisions of the FDCPA. *Dupuy v. Weltman*, 442 F. Supp. 2d 822, 825 fn. 1 (N.D. Cal. 2006); see also *Abels v. JBC Legal Group*, P.C., 227 F.R.D. 541; citing *Edstrom v. All Services and Processing*, 2005 U.S. Dist. LEXIS 2773, 2005 WL 645920 (N.D.Cal. February, 2005), (California has incorporated by reference the text of certain federal provisions into the [Rosenthal Act], rather than copying them verbatim into the California code.) See also, *Mejia v.*

*Marauder Corp.*, 2007 U.S. Dist. LEXIS 21313 (N.D. Cal. 2007) and *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061 (N.D. Cal. 2004).   In summary, "The Rosenthal Act establishes liability under California law for violations of the FDCPA."   *Sial v. Unifund CCR Partners*, 2008 U.S. Dist. LEXIS 66666 (S.D. Cal. Aug. 28, 2008).

## VI.    Conclusion

After multiple attempts to force PRA to substantiate their claims, it has become entirely obvious that PRA cannot substantiate their claims because they are entirely false.   There was never an attempt by Heathman to form an account stated, nor was there any contract or series of transactions between PRA and Heathman on which to base an account stated.   PRA fabricated the legal status of the debt for its own purposes.   PRA wanted a cause of action that required little in the way of evidence, and posed no risk of attorneys' fees, arbitration, or affirmative defenses should Heathman retain an attorney, defend on the case, and prevail at trial.   Further, because PRA expected Heathman to default on the state court lawsuit, PRA also fabricated other common counts and attempted to collect $6,410.08 from Heathman under a theory of *assumpsit* when the real amount due under a theory of *assumpsit*  was zero.

All of this was in violation of the FDCPA and California's Rosenthal Act, and judgment should be entered in favor of Heathman.

**HYDE & SWIGART**

Date: December 4, 2012                    By:  /s Joshua B. Swigart____
                                                                 Joshua B. Swigart
                                                                 Attorneys for Plaintiff

**HYDE & SWIGART**
San Diego, California

[Additional Counsel]

Clinton J. Rooney
225 Broadway, Ste. 1900
San Diego, CA 92101
(619) 234-0212
Fax: 619-232-1382
rooneycdi@gmail.com

Stephen G. Recordon
**RECORDON & RECORDON**
225 Broadway, Ste. 1900
San Diego, CA 92101
(619) 232-1717
Fax: (619) 232-5325
sgrecordon@aol.com