1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile:  (415) 352-2625

7  Attorneys for Defendant
   Portfolio Recovery Associates, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET HEATHMAN, | CASE NO.: 12-cv-00201-IEG-RBB |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | Date:  January 22, 2013<br>Time:  10:30 a.m.<br>Crtrm.: 1 |
| Defendant. | Judge: Hon. Irma E. Gonzalez |

## I. INTRODUCTION

In May 2009, Defendant Portfolio Recovery Associates, LLC ("PRA") purchased a portfolio of delinquent credit card accounts from American Express Centurion Bank ("American Express"). One of the accounts within the portfolio was an American Express card issued to a man named Peter Homa. In February 2011, PRA retained a law firm in California, CIR Law Offices ("CIR") to collect the debt and to initiate litigation against Mr. Homa if necessary.

Unbeknownst to PRA, on July 21, 2011, CIR erroneously filed a lawsuit against Plaintiff Janet Heathman ("Heathman") to collect the unpaid balance on Mr. Homa's account. PRA did not authorize CIR to file the lawsuit against Ms. Heathman, and PRA was not aware that it had been filed until it was served with the complaint in this action. Although PRA certainly regrets the error made by CIR, there is no legal or factual basis for holding PRA liable under the FDCPA or the Rosenthal Act.

First, Ms. Heathman has not offered any evidence that the balance of the unpaid account was a "debt" that is subject to the FDCPA or Rosenthal Act. To meet this threshold issue, she would need proof that the charges were incurred "primarily for personal, family or household purposes." As Ms. Heathman confirmed in her deposition, she does not know Mr. Homa, she did not make any charges on his American Express account, and she has no idea why or how those charges were incurred. Nor do PRA's records reflect the reasons why the charges were incurred.

Next, even if should could prove that the FDCPA and Rosenthal Act applied here, PRA is not vicariously liable for filing of the erroneous lawsuit. PRA never authorized CIR to sue Ms. Heathman to collect on Mr. Homa's account, and thus CIR was acting outside of the scope of its agency when it did so.

Finally, Ms. Heathman is not entitled to summary judgment under section 1692g of the FDCPA, because she has never sued PRA for violating that section. She cannot get summary judgment on a claim she has never asserted. Even if she

...

had filed a section 1692g claim it would fail, because the collection lawsuit filed on behalf of PRA is not an "initial communication" that triggers PRA's obligations under section 1692g.

For each of the reasons discussed herein, the Court should deny Heathman's motion for summary judgment, and it should enter summary judgment in favor of PRA on all the claims.

## II.  STATEMENT OF FACTS

On May 26, 2009, PRA purchased a portfolio of charged-off credit card accounts, including an unpaid American Express credit card account that had been issued to a gentleman named Peter Homa, with the last four digits ending in 1003, and a balance of $6,410.08.  *See* Declaration of Melissa Massey In Support Of Defendant's Opposition To Plaintiff's Motion For Summary Judgment ("Massey Decl."), ¶ 2.  The information PRA obtained from the seller relating to the account does not indicate how or why the balance was incurred or whether the balance is the result of charges made primarily for personal, family or household purposes.  *Id*. ¶ 6.  On February 11, 2011, PRA referred Mr. Homa's account to CIR Law Offices for collection, and CIR was authorized to proceed with litigation against Mr. Homa if the firm deemed it appropriate.  *Id*. ¶ 3.

On January 25, 2012, Plaintiff Janet Heathman filed the complaint in this action (the "Federal Complaint") against PRA.  After it was served with Federal Complaint, PRA learned for the first time that CIR had erroneously filed a lawsuit against Ms. Heathman (instead of Mr. Homa) on July 21, 2011, in an action styled as *Portfolio Recovery Associates, LLC v. Janet B. Heathman*, Case No. 37-2011-00094796-CL-CL-CTL, in the Superior Court of California, County of San Diego.  *Id*. ¶ 4.  That suit sought to collect the balance of $6,410.08, which was the amount owed on Mr. Homa's American Express account.  *Id*.  PRA never authorized CIR to file a lawsuit against Ms. Heathman to collect the balance of $6,410.08 owed on Mr. Homa's American Express account.  *Id*. ¶ 5.

Heathman has never had an American Express credit card. *See* Declaration of Arvin Lugay In Support of Defendant's Opposition To Plaintiff's Motion For Summary Judgment ("Lugay Decl."), Ex. E [Heathman Depo. 57:3-9]. She does not know anyone named Peter Homa, has never used any of Peter Homa's credit cards, has never been present when he has used a card, and has no idea what he used his card for. *Id*. [Heathman Depo. 57:12-59:13]. Heathman's discovery responses confirm that she has no idea whether the unpaid balance on the card reflects charges incurred primarily for personal, family or household use. *Id*. Ex. C, D [Heathman responses to PRA's interrogatories and requests for admission].

### III. ARGUMENT

#### A. Heathman's Motion Must Be Denied Because She Has Presented No Evidence That The Debt Was Incurred Primarily For Personal, Family Or Household Use

Heathman's motion must be denied because she has no evidence to support an essential element of her claim; namely, that PRA was seeking to collect a "debt" covered by the FDCPA and the Rosenthal Act. She testified that she had never had an American Express account, had never met Mr. Homa and that she had no idea what he had used his credit card for. Given the complete absence of evidence on this point, the Court should deny Heathman's motion, and should grant summary judgment in favor of PRA on all her claims.

An essential element of any claim under the FDCPA is that the debt was incurred "primarily for personal, family or household purposes." *See* 15 U.S.C. § 1692a(5).[1] The existence of a "debt" is not something that can be presumed. In fact, the Ninth Circuit has held that proving the existence of a "debt" within the meaning of the FDCPA is a "threshold" issue in every FDCPA case. *See Turner v. Cook*, 362

---

[1] Similarly, the California Rosenthal Act only applies to debts incurred primarily for personal, family or household use. *See* Cal. Civ. Code §§ 1788.2 (e) (defining "consumer credit transaction"), 1788.2(f) (defining "consumer debt" and "consumer credit").

1  F.3d 1219, 1226-27 (9th Cir. 2004) ("Because not all obligations to pay are
2  considered debts under the FDCPA, a threshold issue in a suit brought under the Act
3  is whether or not the dispute involves a 'debt' within the meaning of the statute.").
4        To determine if a "debt" was incurred, the relevant focus is on how the <u>debtor</u>
5  used the funds, <u>not</u> on the way that the original lender or subsequent collector treated
6  the debt. *See Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1068 (9th Cir. 1992)
7  (personal loan from a friend used to start software business not a "debt": "The
8  [FDCPA] characterizes debts in terms of end uses . . . [n]either the lender's motives
9  nor the fashion in which the loan is memorialized are dispositive of the inquiry").
10 The fact that a collector may treat an obligation to pay as a "debt" under the Act is
11 <u>irrelevant</u> to the inquiry. *See Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1076
12 (9th Cir. 2001) (rejecting argument that defendant's collection efforts "transformed"
13 commercial loan into a consumer debt: "We, too, refuse to ignore Congress's intent
14 by defining a consumer debt in accordance with the actions of the debt collector,
15 rather than the true nature of the debt.").
16       The burden of proving the existence of a "debt" lies with Heathman. If she
17 cannot produce competent evidence of the nature of the unpaid credit card charges
18 made on the account, then she has not shown that the FDCPA applies, and summary
19 judgment should be granted for PRA. *See, e.g., Anderson v. AFNI, Inc.,* 2011 WL
20 1808779, *14 (E.D. Pa. May 11, 2011) (proof of the existence of a "debt" is an
21 essential element of plaintiff's claim); *Matin v. Fulton, Friedman & Gullace LLP,*
22 2011 WL 5925019, *4-5 (E.D. Pa. Nov. 14, 2011) (same, following *Anderson*).
23       The plaintiff in *Anderson* was a victim of identity theft. She argued that the
24 FDCPA applied, because the debts were incurred by an individual, the address
25 associated with debts was residential, and defendant had treated the debts as if they
26 were subject to the FDCPA. *See Anderson*, 2011 WL 1808779 at *13-14. The court
27 rejected this, noting that "individuals may – and often do – carry on commercial
28 activities in residential settings." *Id.* Relying on the Ninth Circuit's decision in

*Slenk*, the court concluded that Plaintiff offered nothing more than "speculation and conjecture" about the reasons the debts were incurred, and held no reasonable jury could find the obligations were subject to the FDCPA. *Id.* at *14.

Plaintiff in *Matin* admitted that the credit card account at issue was hers, but testified that she could not recall any of the purchases she had made. *Matin,* 2011 WL 5925019, *1. Although she produced a single credit card statement, the court granted summary judgment for defendant, noting that the statement did not include an "itemized list" of charges comprising the debt. *Id.* at *3. Even if an itemized list had been included, summary judgment was still proper because "we would still lack sufficient information to determine whether the purchases were made for primarily personal, family, or household purposes. This is especially the case because Matin herself is unable to recall what purchases she made on her credit card and the purposes of those purchases." *Id.*

Consistent with *Anderson* and *Matin,* the Court may not speculate that the charges made on the Homa credit card at issue are "debts" under the FDCPA. Heathman has provided no evidence that the unpaid balance was comprised of charges incurred "primarily for personal, family or household purposes."

Heathman may argue, as the plaintiff did in *Matin*, that the Court should simply infer that the FDCPA applies, because the unpaid debt was incurred on a credit card. But personal credit cards are routinely used for business purposes, and those business charges are not covered by the FDCPA or the Rosenthal Act.[2]

---

[2] For example, a charge made for airline tickets on "Southwest Airlines" or for a room at "Hilton Hotel" could be for business travel. A purchase at "Best Buy" could be a business debt for an office computer. Restaurant charges might be related to a business dinner. Charges made at "Walmart" could be for groceries for an office party or business meeting. A charge at a "Chevron" gas station could be for a business trip. If the majority of the charges comprising the balance on a personal credit card are for business expenses, the debt was <u>not</u> incurred "primarily for personal, family or household" purposes, and there is no FDCPA claim. *See, e.g., In Re Creditrust Corp.*, 283 B.R. 826, 830-31 (D. Md. 2003) (attempts to collect credit card used for business

In addition to business expenses, which are not covered by the FDCPA, credit cards can be used to pay for numerous other items that do <u>not</u> qualify as "debts" under the Act. For example, federal and state governments operate web sites that allow individuals to pay their taxes and municipal fines over the Internet with a credit card, neither of which are "debts" covered by the Act.[3] Credit cards can also be used to obtain cash advances, and that cash can be used to pay for a litany of items that are <u>not</u> "debts" covered by the FDCPA. A cardholder could use a cash advance to finance his small business, or to make a business loan to a friend, thereby incurring a business debt. Or a credit card cash advance might be used for multiple other purposes, including for the payment of taxes, payment of fines, or for child support obligations – none of which would create a "debt" covered by the FDCPA or the Rosenthal Act.[4]

---

purposes not covered by FDCPA); *see also Bloom*, 972 F.2d at 1068-69 (loan made to friend for business investment not a "debt"); *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (commercial obligation not covered by FDCPA); *Fleet National Bank v. Baker*, 263 F. Supp. 2d 150, 154 (D. Mass. 2003) (commercial real estate loan not covered); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1338 (D. Utah 1997) (three checks used for debtor's painting business not covered).

[3] Credit cards can be used to pay state and federal income taxes, and a variety of municipal fines, such as parking tickets and other traffic citations. *See* State of California Franchise Tax Board, https://www.ftb.ca.gov/online/CCard.shtml (last visited February 8, 2013) (providing instructions on how to pay California state income taxes using a Discover, MasterCard, Visa or American Express credit card); Official Payments, https://www.officialpayments.com/fed/index.jsp?x (last visited February 8, 2013) (providing an online platform that allows individuals to pay federal income taxes and business taxes with a credit card); *see also* Superior Court of California, County of San Francisco: Pay Your Traffic or Non-Traffic Citation Online, http://www.sftc.org/browser_pages/Traffic/citation_online.htm (last visited February 8, 2013) (providing an online platform that allows individuals to pay traffic citations with a credit card).

[4] *See, e.g., Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) ("the municipal fines levied against Gulley cannot reasonably be understood as 'debts' arising from consensual consumer transactions for goods and services."); *Pollice v. National*

Heathman has not even attempted to meet her burden of proving how and why the charges that comprise the unpaid balance on the card was incurred. She has no evidence on the "threshold" issue of whether the FDCPA or Rosenthal Act apply. Summary judgment should be granted for PRA.

### B. PRA Is Not Vicariously Liable For CIR's Conduct, Because CIR Was Never Authorized To File Suit Against Ms. Heathman To Collect The Balance On Mr. Homa's American Express Account

CIR Law Offices acted outside the scope of its agency when it erroneously filed a state court complaint against Ms. Heathman to collect the balance owed on Mr. Homa's account. CIR was authorized to proceed if necessary with litigation against Mr. Homa, but PRA never authorized CIR to attempt to collect the account from Ms. Heathman. As a result, no agency relationship existed between PRA and CIR when CIR erroneously filed the unauthorized complaint, and PRA cannot be held vicariously liable for CIR's conduct under the FDCPA.

PRA cannot be vicariously liable for the conduct of CIR unless Heathman shows that it exercised control over CIR's conduct in filing suit against her. "Under general principles of agency – which form the basis of vicarious liability under the FDCPA [citation omitted] – to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" *Clark v. Capital Credit Coll. Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (citing *Newman v. Checkrite California*, 912 F. Supp. 1354, 1370 (E.D.Cal.1995); Restatement (Second) of Agency § 1 (1958)). Where, as here, an agent acts outside the scope of its agency relationship by initiating a collection lawsuit in the name of the principal

---

*Tax Funding, LP*, 225 F.3d 379, 401-02 (3d Cir. 2000) (property taxes not "debts" under the FDCPA); *Mabe v. GC Servs, Ltd.*, 32 F.3d 86, 88 (4th Cir. 1994) (child support obligations not "debts" under the FDCPA); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980) (municipal taxes not "debts" under the FDCPA); *Graham v. ACS*, 2006 WL 2911780, *2 (D. Minn. 2006) (unpaid parking tickets not "debts" under FDCPA); *Betts v. Equifax Credit Info. Servs., Inc.*, 245 F.Supp. 2d 1130, 1133-34 (W.D. Wash. 2003) (towing and impoundment fees not a "debt" under FDCPA).

1  that is not within the authority granted by the principal, there is no vicarious liability.
2  *See Johnson v. JP Morgan Chase Bank*, 2008 WL 5100177, *5-*6 (E.D. Cal. Dec. 1,
3  2008) (granting summary judgment on FDCPA and Rosenthal Act claims; no agency
4  existed where: (1) the agent erroneously filed the underlying state court collection
5  action against plaintiff in the name of the alleged principal; (2) the principal did not
6  authorize the collection action; and (3) the state collection action was filed due to an
7  error caused by the agent.).

8       Here, as in *Johnson*, CIR acted outside the scope of its agency by filing a
9  complaint in PRA's name against Ms. Heathman.  PRA authorized CIR to proceed
10  with litigation against Mr. Homa if necessary - it never authorized CIR to file a
11  lawsuit against Ms. Heathman in an attempt to collect Mr. Homa's account.  *See*
12  Massey Decl., ¶¶ 2-5.  In fact, PRA was not even aware of CIR's error until after it
13  was sued in this lawsuit.  *Id*. at ¶ 5.  Filing the complaint against Ms. Heathman was
14  not within the authority PRA had granted to CIR, and thus CIR was acting outside
15  the scope of the agency relationship.

16       Since PRA had no knowledge that the complaint was erroneously filed against
17  Ms. Heathman, there is no evidence that PRA consented to, ratified, or authorized the
18  collection action.  Given these facts, PRA is not vicariously liable for the erroneous
19  filing of the state court complaint.   Heathman's motion for summary judgment
20  should be denied, and the Court should enter summary judgment in favor of PRA.

21       **C.    Heathman Is Not Entitled To Summary Judgment Under Section 1692g Of The FDCPA Because She Did Not Sue PRA Under That Section And Because A Complaint Is Not An Initial Communication Within The Meaning Of That Section**

23       Heathman seeks summary judgment under section 1692g(a)(5) of the FDCPA.
24  She claims that PRA failed to provide her with the name and address of the original
25  creditor.  *See* Docket 30-1, pp. 4-5.  The problem with this claim is that Heathman
26  has never even sued PRA under section 1692g of the FDCPA.  *See* Complaint,
27  Docket 1; First Amended Complaint, Docket 15.  She is not entitled to seek summary
28  judgment on a claim she never filed.  *See Coleman v. Quaker Oats Co.*, 232 F.3d

1271 (9th. Cir. 2000) (affirming dismissal of disparate impact claim where the first time plaintiffs had raised issue was in connection with summary judgment motion). Her request for summary judgment on this claim must be denied.

Even if Heathman had filed a section 1692g claim, it would fail.  The only communication challenged by Heathman is the state court complaint that was filed against her by CIR.  This is a "formal pleading in a civil action" and it therefore cannot be an "initial communication" that triggers PRA's duty to provide the notice under section 1692g(a)(5).  *See* 15 U.S.C. 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).").

In addition, once Heathman retained her present counsel to handle the collection action, none of the subsequent communications with her attorneys were subject to the FDCPA.  *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007) (communications directed to a debtor's attorney are not actionable under the FDCPA).  Any section 1692g would fail.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment should be denied.  The Court should enter summary judgment for PRA on all claims.

DATED: January 8, 2013           SIMMONDS & NARITA LLP
                                 TOMIO B. NARITA
                                 ARVIN C. LUGAY


                                 By:  s/Tomio B. Narita
                                      Tomio B. Narita
                                      Attorneys for Defendant
                                      Portfolio Recovery Associates, LLC.